16-0791, I'm on behalf of the Assembly of the United States Senate and the Swiss. Thank you. Mr. Hamlin, will you proceed? Good morning, Your Honor. My name is Richard Hamlin. I represent the defendant Appalachian, Timothy Baker, my proof of court counsel. Your Honor, this is going to be a little bit unusual. I just learned today, this morning, that the state intends to withdraw a portion of their argument in this case. Specifically, whether or not the excited utterance hearsay exception applies to prior consistent statements. My understanding is that the state is no longer going to argue that it does. To be honest, most of my argument was compulsive, actually, about the topic of whether or not it did. So I am going, unless Your Honor has any comments or questions on that, on that topic, I'm going to move straight on to the topic of plain error. So then they're basically conceding that you don't have to challenge both. Is that what you're saying? Maybe we should ask them this way. I'm speaking for them. Why don't you hold on a second. Yes, Your Honor. I'm sorry. But in going through this for the second or third time, we looked at Rule 613C and determined that it was not warranted to argue that, in fact, a prior consistent statement could be admitted substantively. So, therefore, we're not arguing that. We're only arguing that, in fact, it's not plain error under the facts of this case. Okay. Thank you. Okay. So, unless Your Honor has any questions on that topic, then I will move on to the facts of this case in plain error. I would ask Your Honor to find that the admission of these statements in this case were plain error because the evidence in this case was closely balanced. The defendant and the complainant were obviously the only two witnesses to the incident in this case. The defendant testified once. The jury heard his testimony one time. The complainant in this case was allowed to testify, and then the jury was allowed to hear her testimony a second time in the form of Dorsey's testimony about her prior statement. And the jury was also allowed to hear the complainant's testimony that she had also told her same story to at least three other people on the morning of the incident. But when they said same story, they didn't say they didn't repeat what the story was. It just said same story. But how – it didn't reiterate any story, did it? That's true. And that definitely reduces the prejudice. And, you know, the relevant case there is the Wong case that stayed in – that's cited in State's brief in Meyer-Clybury, where the court found it was not plain error when a witness testified to a single time that he had on one occasion said the truth, I think was the way he was phrasing that case. If it was one – you know, if she had said that one time, I said this before, I don't – you know, I wouldn't have much to say about plain error. But what we do have is she said that she said it to a nurse, she said it to a police officer, she said it to counselors at Malcolm Eaton. And then you combine that with the prejudicial effect of Dorsey's testimony regarding what either is the third statement that – or I'm sorry, the fourth statement that the complainant referred to, or it was a fifth statement, depending on whether he was the Malcolm Eaton employee that she was talking about. Did the prosecution argue to the fact finder the fact that this statement was repeated over and over again to bolster the credibility of the victim? I don't know that – I don't think the prosecutor specifically argued that you should believe her because she said it over and over again. But still, the prejudicial effect of Price's statement is simply, you know, the fact that, you know, people naturally tend to believe things that are repeated over and over again. So just, you know, the fact of the repetition in a case where nothing else really pushes the scales one way or the other between the defendant's story and the complainant's. How about Officer Maritos who observed the bruises? Did Officer Maritos observe the bruises? Yeah, he did testify today, and so that would be my next question. We're segueing into the – inevitably, we've got to examine whether or not we feel the evidence is closely balanced, correct? Correct. To prevail on the plenary. So you have her testimony. Officer Maritos observed bruises on her neck. There were photographs submitted into evidence, as I understand, documenting the bruises on the neck. The defendant admits there had been a confrontation with her. There was a teasing. There was an incident. So why is it not sufficient evidence to carry the vigor? Why is it closely balanced? Okay, let me start with the bruises. In my memory, it's John. Now, Officer Maritos did testify. He observed bruises. I don't think Officer Maritos talked about the age of the bruises that he observed. Isn't that the function of the jury to judge the credibility of the witnesses in resolving conflicts with respect to the bruising? If this was a reasonable doubt argument, yes. But the question is, you know, could the jury have been influenced by the repetition of the statements in that process? The only testimony about the age of the bruises was Dorsey's testimony. And Dorsey, you know, insisted that the bruises looked fresh to him. But the record contains people's exhibits number one and number two, which are the pictures of the bruises, that we're not sure, and this is part of the problem, is we're not even sure when those pictures were taken. Because based on the testimony, there were actually three sets of pictures taken, and nobody testified which set those two came from. But if you look at the pictures themselves, the bruises are yellow. I mean, there's no real – there's no way to deny that, and although Dorsey did. And so I don't think when you take Dorsey's testimony plus those pictures, you know, the question is, were those bruises created on the morning of April 27th? And I don't think you can conclude that based on Dorsey's – any of these will try to – won't necessarily conclude that based just on those pictures and that testimony. How about Maritose going to the house, the lamp's on, he's knocking, no one answers. He turns around, the lamp goes off. Well, that's really – that testimony and the text message are both consistent with both stories. Because both the defendant and the complainant, you know, in both versions, she threatened to call the police on him and threatened to tell them that he committed a battery. And, you know, the difference was, you know, in his version, that would be a lie. And in her version, that would be the truth. But doesn't that also imply that he was inside the home and didn't want to speak to the officers? Well, correct. And I think that based on his version of events, particularly since he testified that on a previous occasion she had called the police on him for no good reason and he had been arrested for it, that's consistent with his being reluctant to talk to a police officer that day. And also consistent with him assuming that the police officer coming to his house was because the complainant had made a complaint about him and hence the text message. He corroborated that they were arguing that day and then he damaged the bathroom door by slamming it, correct? Right. Yes, he did. But he corroborates the victim's testimony in that regard. Yes, he does. I mean, really, there's one difference between his testimony and the victim's testimony, and that is… That's the matter. Yeah, that's the, you know, the truth. But the other evidence is consistent with both their versions. And it's a question of, you know, did the jury believe her in saying that he battered her or him in saying he didn't. And on that point, the prior assistant's statements are, you know, particularly prejudicial because they go directly to her credibility on that point. So, unless you have any further questions, I… Regarding talking to other people other than Dorsey, you've argued consistently that it was the same story, that she testified that she told these people the same story. Now, the transcript actually at R156 and R157 says that she told these people what happened. Is there a difference between her saying it's the same story, I told these people the same story, which is similar to the case that you said, and her actual testimony, which is I told those people what happened. I don't think there's a difference in the context of this case, particularly when you take… She tells the story first in her testimony and then says I told them what happened. The implication there is I told them what I just told you. On top of that, you have Dorsey's testimony with the last statement that she made, and he obviously went through the details of it, and it is the same story as what she testified to on the stand. But it's not cumulative or it's not really a prior consistent because nobody ever heard what that same story was, correct? I mean, isn't it a little different than saying, yeah, I told him that I was in the bathroom, my brother came in, grabbed me, choked me, slammed the door. And said, she says, I said the same story. It's not as present prejudicial. And that's still holding the wall. It's not as bad. It's not as bad. But it is still there. And so you do add it on with the other statements. And I probably, if there wasn't Dorsey's testimony, this would be a different case. But when you throw on Dorsey's testimony and him saying pretty much the exact same story in detail on top of her story, that is enough. And particularly in a case where there really isn't any collaboration outside, in the important part of the testimony outside of her word and his word. Other than the bruising in the pictures and the officer's observations. She had bruises. That's not disputed, right? Right. The question is, were those bruises created on the morning of April 27th? And I don't think the pictures corroborate that. In the absence of this testimony, how would you ever corroborate how it happened? Well, I mean, you could have fresh bruises. I mean, that would help. Who is to make the determination as to whether those bruises are fresh and weren't fresh? You know, preferably there would be expert testimony from someone with a medical background. We don't have that because the state didn't present it. Or the defense didn't present it either. Not that the burden is on you, but. True. But what you end up with is no expert testimony. And you have common human experience and look yellow. And we've all been bruised before. We all know that they don't turn yellow in a matter of a couple of hours. So just based on that, I think that the picture of the bruises is to not necessarily corroborate the complaint's testimony. So unless you want to answer any further questions, I'm asking you to reverse and advance on your trial. Thank you, Mr. Handel. You will have time for rebuttal. Ms. Swish, you may proceed. Good morning, Your Honors. Counsel. May it please the Court. There are really two main arguments made by the defense in terms of the prior consistent statements. He alleges, first of all, that there were these individuals, employees and a nurse who, I'm going to pronounce her name Box, I believe that's what they said it was pronounced, who Box testified. She told them what happened. She didn't say the same story. And I think there is a difference. I'm going to very much differentiate that. If she had said the same story, while that's not hearsay because she didn't get into exactly what she said, it might have some small prejudicial effect. And I do believe that it would be relatively small even then because the same story to her might not be the same story to somebody else. She's not giving details. But that's not what happened. The record shows that she said to those people, I told them what happened. She could have said something entirely inconsistent. And there's no reasonable inference from that that the judge, as the bench and the trier of fact here, could have determined that, in fact, that meant that she had previously made a prior consistent statement. So in terms of that, we believe there's no prejudice at all. In terms of Dorsey and his testimony was that she had told him that, in fact, the defendant had choked her and pushed her against the refrigerator, both of those statements being consistent with what she testified to. But that came in after, and this is why it's not plain error, that came in after Box testified and on cross-examination. The defense brought out that she had, in fact, talked with Officer Morotis and asked her, didn't you tell him prior to this, didn't you tell him that the defendant had choked you twice that day? So the defense brought out the very fact that, in fact, she had made a statement about the defendant choking her. Now, he's bringing out an inconsistency of some sort in the sense that she said twice, and in her testimony in court she says once. It was just that one point of how many times. Yes. It wasn't like the entire event of what happened. Exactly. That's exactly true. But he does bring out that, in fact, she made this statement about being choked by the defendant. And I believe that goes to the prejudice, too. I mean, obviously, if the court has already heard that there was a prior statement by her that the defendant caused these bruises, and by choking her, you know, whether it's one time or a second time, she tries to explain away that difference. Certainly, this is a cumulative type of error, if anything, because we now know that she's made a statement accusing him of having caused these bruises, and that was brought out by the defense. Let me just ask you about your concession this morning, or I guess that's what it is. Are you conceding that it was error to allow in Dorsey's testimony about what the victim said? To the extent that it's consistent, you know, to the extent that the remarks that he brings out that she told him that were consistent with her statement that the defendant pushed her and choked her, yes, to that extent we are. We believe that under 613C it appears to be a prior and consistent statement, and that, excuse me, prior and consistent statement, and that that rule has now made it clear that, in fact, it's not to be used substantively. And if it wasn't an excited utterance, or was it not? Your Honor, we believe it was an excited utterance. It was? Yes, yes. So an excited utterance now under 613, according to your analysis, is always, if it's a prior and consistent statement, is always inadmissible as substantive utterance? It appears that 613C says that. The language on that says that even if it's used to rebut a recent fabrication or a motive, that it can only come in for rehabilitation purposes only to the extent that the statement was made at a time when those did not, were not present, and it does not matter, even if it's an exception to the, even if it's an excited utterance, even if it's an exception to hearsay, it does not matter in terms of substantive. It cannot be admitted substantively. Do you have any case law that stands for that proposition? This is your interpretation of the rule, right? That is, I think, the plain language of the rule, Your Honor, yes. So even if it's an excited utterance, the old spontaneous declaration, it can't come in? Your Honor, it appears from that rule that the language is that it can no longer come in, that it is only for rehabilitation purposes. Now, if Your Honor, you know, believe I made a concession that need not be made, I will point out that prior to that, there's the Watt case and there's the Shull case, which is Fourth District, which talks about Watt basically. Watt is from our district, isn't it? That's correct. And in those, it was determined whether it was, I believe, a forfeiture of the issue, because as like here, it was argued in terms of hearsay and not in terms of a prior consistent statement. Right. But also there was language there that said it can be one or the other, and it can either be an excited utterance, and in terms of that, once you have that, if you have that, you have an exception to the hearsay rule, and then therefore, you can bring it in on that ground. If not, it can be brought in as rehabilitation. Now, the rule was amended in 2015, which was after those cases. And the amendment says that I don't have the language right in front of me. I have it back on my desk. But the language says that it can be used under these circumstances for rehabilitation only, not as a substantive statement, even as an exception to hearsay. So for the moment that you're correcting your analysis, we inevitably and inexorably get to the issue of whether or not the evidence is closely balanced, do we not? Correct. You heard him recite why he believes it is. Can you tell us why it is not closely balanced? Yes, exactly, Your Honor. What we have here is we have Dorsey's testimony. Excuse me. You know, we have Box's testimony, which is clear and consistent with the physical evidence, the physical evidence being the bruising. And her bruises, she came into work. She is part of a vulnerable population where they had mandated reporters where she worked. She came into work very excited, very upset, not herself, and with bruises along her neck, which were spotted by one of the mandated reporters, and immediately she was taken aside then. And the rest, you know, progressed with her talking to people through the day. Dorsey, who saw her later that day, he was a caseworker. He had some training in the recency of bruising. So in that sense, he had something to offer in terms of perhaps, you know, knowing when you see something that is recent, and he thought that these were recent. He obviously saw the bruises. Did Dorsey testify that he had some training in this? He did. And in his opinion, they were recent. That's correct, yes. So it came out that he had some knowledge beyond the average person? That's correct, yes. So that's what he testified to. So the photos are in these exhibits, and certainly we would take issue with defense's argument that they show yellowing and show something that could not be consistent with a bruise that occurred that very day. And we would point out that as mandated reporters, the fact that they saw her on this day, a day when she reports this occurred, that, you know, it gives a reasonable inference that had there been bruising a day before this or something else when she came to work, that they would have also noted this and taken some steps to take care of the issue at that point. Additionally, we know from the text message, and that text message, the actual exhibit was not admitted and was not even moved into admission. But Dorsey testified to the text message, and there was no objection on hearsay or any other grounds, so it's admitted for its normal probative value. And in it, the defendant said, I told you if you told the police on me, then you no longer live here. Don't bother coming back home. And it's clear that it is the defendant who said that, because the text message, you know, certainly comes from a person who has that ability to keep her from the home. And she then says that, you know, in fact, he's the lessee, excuse me, he's the owner of the home. She writes from him. So it has to be from the defendant. That's a reasonable inference from this evidence. So we know that he's threatening her. When the police officers show up at his house, he, in fact, does not answer the door. The light turns off, so the officer knows that somebody's there when he's knocking. And yet, you know, the light's on, the light goes off. Yet he does not answer the door. There's certainly a reasonable inference from that that he has something to hide as to, you know, the actual physical nature of this confrontation rather than just a verbal. So you're suggesting that inference can be drawn if that refers to a consciousness of guilt? Is that sort of what you're saying? Exactly. Exactly, Your Honor. So between all those things and his own statement, which is that this has something to do with an eviction, that he gave her a notice of eviction prior to this date and that she was trying to get back at him for that. Well, he also admits in his testimony that she was in fine spirits that day. Well, the notice of eviction had already been served. So his defense theory that somehow this all had to do with her making up a story against him because of an eviction does not even make sense. In addition, we have the fact that in both closing and in opening arguments, none of these prior statements, and I will call them, you know, prior statements because it's not necessarily true that they were consistent in terms of what we know about, you know, what happened. But there was no mention of these in either the closing or the opening argument by the State. So that's another reason why we would urge this Court to find that no plain error occurred. Thank you, Your Honor. Thank you, Ms. Swiss. Mr. Hamlin, you may proceed. Your Honor. I have to ask you, what do you make of this testimony that seems to be referring to Dorsey  Well, this is an interesting testimony because it actually came out on cross-examination. On direct examination, Dorsey simply was shown People's Exhibits 1 and 2 and testified that, yes, that's what those bruises looked like to me when I saw them. On cross-examination, counsel went into, and the reason counsel went into this is because his bruises are yellow. And he asked Dorsey, have you had training in the aging of bruises? And Dorsey did reply that he did. And then he testified, in his opinion, the bruises were fresh because, in his opinion, the bruises were not yellow. And then the defense counsel shows him People's Exhibits 1 and 2 and says,  they're not. I mean, the exhibits are red. They're yellow. So I don't know what you can really do with Dorsey's testimony on that. I don't think it causes As Justice Shostak has alluded to throughout the argument, that's up to the trier effect, isn't it? It is, exactly. But the point is that the trier effect is evidence closely balanced for the trier effect. And here I think it is because that is something that the trier fact had to deal with. And then also on a related topic, the state argues that if the bruises were older, then they would have been noticed earlier. There's no testimony that the complaint worked the day before or the day before that. So there's no testimony anybody would have had an opportunity to see bruises on her on the 26th or the 25th or the 24th. And if they were created on the 26th or 25th, then they weren't created in this incident and they came from somewhere else that we don't know anything about. So because of that, this evidence was, in fact, closely balanced. And, you know, and finally, just briefly, because, you know, in light of the state's concession, I do think the state's concession is correct that Rule 613C does prohibit or does not allow hearsay exceptions to its rule but to its prohibition. And it makes sense because the prior consistent state rule and the hearsay rule are just completely different beasts. The hearsay rule is there because of reliability. Its exceptions are there because they address reliability. And prior consistent statements are almost by definition reliable because the witness testifies. You know, you can't have a prior consistent statement without a witness testifying and the subject's cross-examination. So there's not a reliability concern. So applying a hearsay exception doesn't really do anything to address the real concern for prior consistent statements, which is just that repetition is not prohibitive and potentially prejudicial. So are you submitting then, based upon that interpretation, that Watt was wrongly decided? I believe it was. And if you trace it back, the real problem case is the middle case, is Davis. Davis. Watt cites Davis, and Davis says what Watt says it says. But then if you take Davis and go from there to Robinson, Robinson does not deal with prior consistent statements. Really dealt with spontaneous declaration. Correct. And dealt with, it was a situation, again, where the defendant not only didn't object to it on hearsay grounds, but also raised hearsay grounds in the Supreme Court. So they weren't talking about the prior consistent statement rule. And on top of that, it's a 1978 decision. It's not even clear in Robinson whether the court found that there was no error or if they found that it was harmless error. They found there was no error in Davis, correct? Correct. But I don't think in Davis the problem wasn't the, it was dicta in Davis. The part about the excited utterance or spontaneous declaration was actually just dicta in Davis. That wasn't even the issue. That prior consistent statement didn't show plain error in Davis, did it? Right. Right. Kind of different facts than Watt relied on, and Watt relied on Davis. Right. Right. But if you go all the way back to Robinson, there really is no root for this line of cases. Let me ask you a pointed question. In light of the concession by the State, in light of the procedural posture of the case, in resolving this matter and deciding this case, we don't need to revisit Watt, do we? Under these circumstances, probably not. We could, but we don't necessarily need to, do we? I don't think you would need to find the State. I think you would need to find the State itself. Straighten out the line. Correct. So I don't think I have any further questions. I would ask that you rest and run the class for a new trial. Thank you. Thank the attorneys for their argument today. The case will be taken under advisement for a short recess.